IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CARLOS ARMANDO ORTEGA,           )    No. C 12-3426 SBA (PR)
                                 )
            Plaintiff,           )    **ORDER DISMISSING COMPLAINT**
                                 )    **WITH LEAVE TO AMEND**
      v.                         )
                                 )
SERGEANT FLAVETTA, et al.,       )
                                 )
            Defendants.          )
_____  )

## INTRODUCTION

Plaintiff Carlos Armando Ortega, who is currently incarcerated at the Santa Clara County Jail (SCCJ), has filed a pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. His motion for leave to proceed in forma pauperis (IFP) has been granted. (Dkt. 6).

Venue is proper because the events giving rise to the claim are alleged to have occurred at SCCJ, which is located in this judicial district. See 28 U.S.C. § 1391(b).

In his complaint, Plaintiff names the following Defendants who appear to be officers at SCCJ: Sergeant Flavetta; and Officers A. Guzman, J. Colar, S. Graham, L. Prasad, P. Terry, Robert Barbasa, J. Villagomez, Snowden, M. Cortez, M. Johnson, Bettencourt, Zumora, Galloway, Torres, Blundo, Buggs, Weind, Gomez, Hernandez, Remero, Marichalar, Lopez, Alverez, Tran, Martinilli, Atchinson, Fortino, Cabbarea, Murk, Kelter, Diaz, and Mackenzi. He seeks monetary damages.

The Court now conducts its initial review of the complaint pursuant to 28 U.S.C. § 1915A.

## BACKGROUND

Plaintiff has two other civil rights action pending in this Court entitled, Ortega v. City of Santa Clara, et al., No. C 09-5527 SBA (PR) (2009 case) and Ortega v. Smith, No. C 11-1003 SBA (PR) (2011 case). In the 2009 case, the Court found that Plaintiff had stated

United States District Court
For the Northern District of California

cognizable claims for failure to treat his serious mental health needs and for violating his due process rights. In the 2011 case, the Court found that Plaintiff had stated cognizable claims for excessive force and deliberate indifference against Officers Barbasa and Villagomez, who are also named as Defendants in the instant action.

Because Plaintiff's complaint in the instant action contains sparse background information, the Court adopts the relevant background information from the May 2, 2011 Order of Dismissal With Leave to Amend in the 2009 case:

> Plaintiff states that beginning in March, 2007, he was housed at SCCJ as a pretrial detainee facing charges of assault with a deadly weapon. (Compl. at 3a.) He claims suffers from a "server [sic] mental disorder bi-polar schizophinnia [sic]," and that he has a "history of 12 year medication [and] hospitalization 1997 to 2009." (Id.) In September, 2007, he was found "incompetent to stand trial." (Id.) He alleges that from June 6, 2007 through September 4, 2007, he was denied mental health treatment. (Id. at 3c.) He alleges that "low medication dosage made [him] think irrationally and spontaneous to two violent out-burst." (Id.)

(May 2, 2011 Order in 2009 case at 1-3 (footnote omitted).)

In the instant complaint, Plaintiff again alleges that he has been a pretrial detainee at SCCJ "since about March 27, 2007" and that he has taking anti-psychotic medication for his bi-polar disorder. Compl. at 3(1). He alleges that Defendants: (1) provoked him to "gas" Officers Barbasa and Guzman; (2) contaminated his food tray with urine; (3) had plumbers contaminate his cell water for five days; (4) opened his cell door in violation of prison procedures "due to inmates level 4 custody [being a] danger to self and others"; and (5) threatened to hang him or hog-tie him, cut him into pieces, and "letting other inmates stab [him] to death or retaliate by killing his 15 year old daughter." Id. at 3(4-9). Plaintiff also alleges that Officers Torres and Blundo "were trying to set [him] up by attack by [an]other inmate." Id. at 3(6-7). Plaintiff adds that Officers Barbasa, Villagomez, and Guzman called him a "rapist" and a "snitch" for filing complaints against other officers. Plaintiff claims many of these actions caused him to become agitated and to have "racing thoughts." Id. at 3(5). He also alleges that, when Officers Prasad and Terry opened the door to his cell, he attacked and assaulted them, causing him to be charged with "another three-strikes case." Id.

Plaintiff ends his complaint by alleging that he still suffers from a severe mental illness which causes him to hear voices and to have irrational thoughts against officers and that he is still being "denied mental health treatment and housing in a mental health ward." Id. at 3(9-10).

Plaintiff requests that the Court issue a temporary restraining order (TRO) against all named Defendants to "keep [them] away" from harassing him. Id. at 3(10). Plaintiff also requests that the Court appoint counsel to represent him in this action.

## DISCUSSION

### I.   Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). It its review, the court must identify cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. Id. § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Liability may be imposed on an individual defendant under § 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981). A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. Leer, 844 F.2d at 633. The inquiry into causation must be individualized and focus on the duties and

responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. Id. Sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's" deprivation of protected rights. Id. at 634.

## II. Exhaustion of Administrative Remedies

Liberally construed, Plaintiff's complaint raises three claims:  (1) the use of excessive force; (2) unsanitary living conditions; and (3) deliberate indifference to his serious medical needs.  A threshold question which must be answered before Plaintiff can proceed with these claims is whether he has exhausted available administrative remedies with respect to each claim.

The Prison Litigation Reform Act of 1995,  (PLRA), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Exhaustion is mandatory and no longer left to the discretion of the district court. Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards."  Id.  The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies.  Id. at 93.

An action must be dismissed unless the prisoner exhausted his available administrative remedies before he or she filed suit, even if the prisoner fully exhausts while the suit is pending. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).

If the district court concludes that the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal without prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003).  A prisoner's concession to non-exhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies.  Id.  Accordingly, a claim may be

1 dismissed without prejudice if it is clear from the record that the prisoner has conceded that he did not exhaust administrative remedies. Id.

The State of California provides its inmates the right to appeal administratively "any policy, decision, action, condition or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse affect upon his or her health, safety or welfare." See Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation (CDCR). See id. § 3084.7; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). This satisfies the administrative remedies exhaustion requirement under § 1997e(a). See id. at 1237-38.

Here, the claims raised in Plaintiff's complaint appear not to have been exhausted through the administrative grievance procedure. On page two of his complaint, Plaintiff lists four prison grievances he has filed, but he indicates that only one made it to "level 3 resolved." Compl. at 2. Furthermore, he fails to indicate which of the claims from the instant complaint were included in the aforementioned prison grievance that was allegedly "resolved" at the third level. From the face of the complaint, therefore, it appears that Plaintiff's some if not all of his claims are unexhausted and subject to dismissal. If Plaintiff did exhaust his administrative remedies with respect to any or all of those claims before filing this action, he may amend his complaint to so allege, as set forth below.

**III.   Legal Claims**

  **A.   Use of Excessive Force**

The Due Process Clause of the Fourteenth Amendment protects a post-arraignment pretrial detainee from the use of excessive force that amounts to punishment. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (citing Bell v. Wolfish, 441 U.S. 520, 535-39 (1979)); see Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir. 2002)

5

(<u>Graham</u> explicates standards applicable to pretrial detention excessive force claim in this circuit) (citations omitted); <u>see also</u>, <u>Simmons v. Navajo County</u>, 609 F.3d 1011, 1017 (9th Cir. 2010) ("Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees, we apply the same standards in both cases.") (internal citations omitted).

To determine whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of the word, the district court first looks to whether the disability imposed is for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. <u>Bell</u>, 441 U.S. at 538. Absent a showing of an express intent to punish, whether a restriction amounts to punishment will generally turn on whether there is an alternative, rational purpose for the restriction, and whether the restriction then appears excessive in relation to that purpose. <u>Id.</u> If a restriction or condition is not reasonably related to a legitimate goal, i.e., if it is arbitrary or purposeless, the court may infer that the purpose of the action is punishment. <u>Id.</u> at 539.

Here, the Court notes that Plaintiff acknowledges that his bipolar disorder may be the cause of his thoughts that Defendants are violating his rights. Therefore, it is possible that some, if not all, of Plaintiff's allegations are the product of his bipolar disorder and not actual occurrences. For this initial review, however, the Court considers all of Plaintiff's allegations. In the future, if Plaintiff submits an amended complaint, he is urged to distinguish Defendants' actual conduct from what he may imagine their conduct to be.

Plaintiff's allegation that Officers Barbasa, Villagomez, and Guzman called him a "rapist" and a "snitch" is insufficient to state a claim for cruel and unusual punishment under the Fourteenth Amendment because verbal abuse and name-calling do not rise to the level of a constitutional violation. See <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987).

Plaintiff's allegation that Officers Prasa and Terry opened the door to his cell, by itself, does not rise to the level of excessive force. Officers would, in the ordinary course of business at SCCJ, open the doors of inmates' cells and, therefore, the purpose in opening a

6

1  cell door would not be to punish Plaintiff.

2  Plaintiff's allegation that Officers Torres and Blundo were "trying to set [Plaintiff]-up
3  [to be] attack[ed] by [an]other inmate" could be cognizable as a constitutional violation.
4  However, such a claim is conclusory because Plaintiff provides no further information
5  regarding how these officers "set up" the alleged attack or if the attack occurred at all.
6  Therefore, the Court is unable to determine whether Officers Torres and Blundo acted
7  unconstitutionally. However, even if Plaintiff could establish a violation, it appears that he
8  has not exhausted his administrative remedies regarding this claim.

9  Plaintiff's allegations that Defendants threatened to beat or "hang" him and threatened
10 to allow other inmates to stab him or retaliate by killing his daughter could also rise to the
11 level of constitutional violations. However, Plaintiff does not allege the specific officers who
12 were responsible for these acts.

13 Although Plaintiff lists the names of many officers, he associates only a few of them
14 with any improper conduct. As indicated above, Plaintiff must allege the specific conduct
15 undertaken by each Defendant that deprived him of a constitutional right. Plaintiff fails to do
16 this, but shall be given leave to amend his complaint to cure this deficiency.

17 Based on the foregoing, the Court dismisses with leave to amend Plaintiff's
18 aforementioned claims so that he may cure the noted deficiencies.

### B. Unsanitary Living Conditions

The Eighth Amendment covers not only the use of force on prisoners but also sets a minimum level for prison conditions, i.e., they may not amount to cruel and unusual punishment. Again, the Due Process Clause, instead of the Eighth Amendment, protects a post-arraignment pretrial detainee against cruel and unusual punishment related to unsanitary jail conditions. See Simmons, 609 F.3d at 1017. However, the same standards apply. Id.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509

7

U.S. 25, 31 (1993). Prison officials must provide prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. Farmer, 511 U.S. at 832. In a conditions of confinement claim under the Eighth Amendment, the prisoner must show that: (1) the deprivation is, objectively, sufficiently serious, and (2) the prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference. Id. at 834. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 837.

The allegations that Defendants contaminated Plaintiff's food with urine or contaminated his cell water could state a cognizable unsanitary living conditions claim if Plaintiff had named the person or persons responsible for these actions. Plaintiff must also further elaborate on each claim in order for the Court to determine if these combined acts created an unconstitutional living condition. See Leer, 844 F.2d at 633 (when prisoner seeks injunctive relief from various personnel responsible for operating prison, focus is on whether combined acts and omissions created unconstitutional living condition). Therefore, this claim is dismissed with leave to amend for Plaintiff to correct the aforementioned pleading deficiencies.

### C. Deliberate Indifference to Serious Medical Needs

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A pre-trial detainee's claim for deliberate indifference to medical needs derives from the Due Process Clause rather than the Eighth Amendment's protection against cruel and unusual punishment. Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). A "serious" medical need exists if the failure to treat a

8

prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. (citing Estelle, 429 U.S. at 104). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer, 511 U.S. at 837.

In his complaint, Plaintiff briefly mentions that he "is still denied mental health treatment and housing in mental health ward." Compl. at 3(10). Such a claim is conclusory, and, it could be duplicative because, as mentioned above, in his 2011 case Plaintiff has previously raised claims related to the jail medical staff's failure to treat his serious mental health needs. Plaintiff's new allegation could state a claim for deliberate indifference to his serious mental health needs if he named the individuals responsible and specified that the individual denied such treatment with the requisite state of mind of deliberate indifference.

Accordingly, this claim is dismissed with leave to amend for Plaintiff to cure this deficiency.

**IV.     Request for Temporary Restraining Order**

Plaintiff seeks a TRO directing Defendants to stop harassing him. Compl. at 3(1). A temporary restraining order (TRO) may be granted without written or oral notice to the adverse party or that party's attorney if: (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or the party's attorney can be heard in opposition, and (2) the applicant's attorney (Plaintiff himself in this case, as he proceeds pro se) certifies in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required. Fed. R. Civ. P. 65(b). Plaintiff has not satisfied both requirements. Therefore the request for a TRO is DENIED.

**V.     Request for Appointment of Counsel**

In his complaint, Plaintiff requests the appointment of counsel to represent him in this action.

9

The Court is unable to assess at this time whether exceptional circumstances exist which would warrant seeking volunteer counsel to accept a pro bono appointment. The proceedings are at an early stage and it is premature for the Court to determine Plaintiff's likelihood of success on the merits. Moreover, Plaintiff has been able to articulate his claims adequately pro se in light of the complexity of the issues involved. See Agyeman v. Corrections Corp. of America, 390 F.3d 1101, 1103 (9th Cir. 2004). In addition, Plaintiff has been directed to file an amended complaint to cure the pleading deficiencies of his complaint. Accordingly, the interests of justice do not require appointment of counsel at this time, and Plaintiff's request is DENIED.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's Fourteenth Amendment claim based on the allegation that Defendants called Plaintiff a "rapist" and a "snitch" is DISMISSED WITHOUT LEAVE TO AMEND. All other claims are DISMISSED WITH LEAVE TO AMEND, in accordance with the instructions provided in this Order.

2. Within **twenty-eight (28) days** from the date of this Order, Plaintiff shall file an amended complaint to correct the pleading deficiencies set forth above. Plaintiff may only assert in an amended complaint claims that he has administratively exhausted. Plaintiff may file an amended complaint using the Court's civil rights complaint form, wherein he must provide information regarding the exhaustion of administrative remedies with respect to all the claims he wishes to pursue in this action. Plaintiff must write the case number for this action -- Case No. C 12-3426 SBA (PR) -- on the form, clearly label the complaint "Amended Complaint," and complete all sections of the form. Because an amended complaint completely replaces the original complaint, Plaintiff must include in it all the claims he wishes to present. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir.), cert. denied, 506 U.S. 915 (1992); Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542,

1546 (9th Cir. 1989). He may not incorporate material from the original complaint by reference. **Plaintiff's failure to file an amended complaint within the twenty-eight-day deadline will result in the dismissal of all claims without prejudice, with the exception of the claims that the Court has found to be cognizable in this Order.**

3. Plaintiff's request for a TRO is DENIED.

4. Plaintiff's request for appointment of counsel is DENIED.

5. The Clerk of the Court is directed to send Plaintiff a blank civil rights complaint form with his copy of this Order.

IT IS SO ORDERED.

DATED: 6/10/13

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

CARLOS A. ORTEGA et al,

        Plaintiff,

v.

CORRECTIONAL OFFICERS et al,

        Defendant.
_____/

Case Number: CV12-03426 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 10, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Carlos Armando Ortega #09071890
Santa Clara County Jail
CTL532
885 N. San Pedro Street
San Jose, CA 95110

Dated: June 10, 2013

        Richard W. Wieking, Clerk
        By: Lisa Clark, Deputy Clerk